**In re GREAT BARRINGTON FAIR AND AMUSEMENT, INC., Debtor.**

**Bankruptcy No. 4–83–00496–G.**

United States Bankruptcy Court, D. Massachusetts.

Aug. 19, 1985.

Frederick G. Fisher, Jr., Hale & Dorr, Boston, Mass., for examiner.

Joseph B. Collins, Hendel, Collins & Stocks, P.C., Springfield, Mass., Harris Aaronson, Aaronson & Fuster, P.C., Pittsfield, Mass., for Richard & John Herbert.

Francis DiMento, DiMento & Sullivan, Boston, Mass., for Michael Abdalla.

Jed L. Berliner, Marullo & Barnes, Boston, Mass., for Unsecured Creditors Committee.

Michael E. MacDonald, Cain, Hibbard, Myers & Cook, Pittsfield, Mass., for First Agricultural Bank.

## MEMORANDUM AND ORDER RE CONFIRMATION OF THE EXAMINER'S FIRST AMENDED LIQUIDATING PLAN OF REORGANIZATION

PAUL W. GLENNON, Bankruptcy Judge.

This matter came before the Court on July 31, 1985 for a hearing on the confirmation of the Examiner's First Liquidating Amended Plan of Reorganization (the "Plan") of Great Barrington Fair and Amusement, Inc. (the "Debtor"). The Plan, and the Examiner's First Amended Disclosure Statement (the "Disclosure Statement") were filed on June 5, 1985.

On July 2, 1985, following a hearing, this Court approved the adequacy of the Disclosure Statement and entered an order which set July 29, 1985 as the last day for filing objections to confirmation of the Plan, filing written acceptances and rejections of the Plan and for all creditors to file proofs of claim against the Debtor. The July 2nd order also set July 31, 1985 as the date for a hearing on the confirmation of the Plan. Notice of that hearing was mailed by the Examiner to all parties entitled thereto, on July 3, 1985.

After reviewing the records in this case, the testimony at the various hearings, the pleadings and memoranda filed by the parties, the Disclosure Statement and the Plan, the Court makes the following findings.

### FACTS

On October 28, 1983, this Court entered an order which appointed Mr. Robert Cataldo as Examiner, and required him to:

file as soon as possible a statement with respect to the basic essentials of a Plan of Reorganization under the Bankruptcy Code conforming to Section 1123 thereof or as to why the Debtor cannot be reorganized [sic], why the case should be converted to a case under Chapter 7 of the Bankruptcy Code, or dismissed provided that the Debtor is excused from any duty to file a Plan under Section 1121 of the Bankruptcy Code, and any creditor or party in interest may also file a Plan, and for this purpose, and after notice and hearing, the 120 and 180 day periods provided in Section 1121 of the Bankruptcy Code is reduced so that any Plan of Reorganization may be filed as soon as practicable and without any waiting period.

The Debtor, under the terms of the Plan, and based on testimony presented and the representations of counsel, shall terminate its existence upon consummation of the Plan.

Class One under the Plan consists of the claim of The First Agricultural Bank (the "Bank").

Class Two consists of five subclasses:
(a) The claims of John and Richard Herbert ("the Herberts");
(b) The claims of George T. Smith and John M. Watson ("Smith and Watson");
(c) The claims of the Commonwealth of Massachusetts, Division of Employment Security ("MDES");
(d) The claims of Harbor National Bank of Boston ("HNB"); and
(e) The claims of American Speaker System, Inc. ("American Speaker")

Class Three consists of the secured claims of Boston Concessions Group, Inc. ("BCI").

Class Four consists of the claims of the Town of Great Barrington and the Great Barrington Fire District for real estate taxes.

Class Five consists of all other unsecured claims, including claims based on the rejection of executory contracts and any deficiency claims of partially secured creditors.

Class Six consists of the holders of Great Barrington Fair and Amusement, Inc. stock.

As of July 29, 1985, the following claims had been filed:

| TYPE OF CLAIM | NUMBER | AMOUNT |
|---|---|---|
| Wages | 13 | $ 21,204.55 |
| Priority | 5 | $ 73,809.86 |
| Administrative | 3 | $ 27,025.83 (not including amounts as may be allowed for professional fees). |
| Secured | 2 | $354,809.85 |
| Taxes | 4 | $ 64,249.47 |
| Unsecured | 34 | $108,320.96 |

The total amount of these filed claims is $649,420.55.

Except to the extent that the holder of a particular claim has agreed to a different treatment of that claim, the Plan provides that with respect to a claim of a kind specified in §§ 507(a)(1), 507(a)(2), 507(a)(3) and 507(a)(6) of the Bankruptcy Code, on the effective date of the Plan (the "Effective Date"), the holders of those claims will receive cash equal to the allowed amount of those claims.

With respect to Class One, the Plan provides that (a) the holder of such claim shall retain the lien securing such claim, though the property subject to such lien is being transferred to Michael Abdalla, Sr., and (b) the holder of the claim in Class One shall receive, on account of such claim, deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the Effective Date, of at least the value of such holder's interest in the Debtor's realty.

With respect to Class Two, and all subclasses therein, and Class Four, the Plan provides that the holders of such claims shall receive on the Effective Date, the allowed amount of such claim.

The Plan, and the Disclosure Statement Provide for full payment of the allowed amount of the claim in Class Three, if a settlement is not reached between the Examiner and BCI.

The holders of claims in Class Five shall be paid, in full satisfaction thereof, their pro rata share of: (a) the net proceeds, remaining after payment of the claims in Classes Two through Four, and the administrative and priority claims as provided in the Plan, and (b) the proceeds of the office litigation remaining after payment of the administrative and priority claims.

Each holder of equity security interest under Class Six shall have his equity interests cancelled and extinguished.

Confirmation of the Plan is to be followed by the liquidation of the Debtor, as proposed in the Plan and Disclosure Statement, by consummation of the sale of the Debtor's physical assets to Michael Abdalla, Sr., for $650,000 on the terms set forth in the Plan.

### DISCUSSION

Class One, The First Agricultural Bank is impaired under the plan, 11 U.S.C. § 1124, and has objected to the confirmation of the Plan. Where a class of holders of claims or interests objects to the confirmation of a Plan, and the Plan's proponents request a "cram-down", the Court must determine whether or not the Plan is "fair and equitable" with respect to the dissenting class. Where, as in the case *sub judice*, the dissenting class is a holder of secured claims, the Plan must meet the requirements of 11 U.S.C. § 1129(b)(2)(A).[1] Those requirements appear to have been met in this case.

Section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code requires that the Plan provide:

---

**1.** Section 1129(b)(2)(A) of the Bankruptcy Code states that:

(A) With respect to a class of secured claims, the plan (must) provides—

(i)(I) that the holder of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property.

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under (i) or (iii) of this subparagraph; or

(iii) for the realization of such holders of the indubitable equivalent of such claims.

that the holders of ... (secured) claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims.

In the case at issue here, the Bank's liens on both the personal and real property are to remain in effect, even after that property is purchased by Mr. Abdalla. The Bank will remain fully secured, to the extent of the allowed amount of their claim.[2]

Section 1129(b)(2)(A)(i)(II) of the Bankruptcy Code requires that the Plan provide that "each holder of a claim ... receive ... deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property." Under the Examiner's Plan, the Bank will receive deferred cash payments over six years. The exact amount of those payments has not yet been determined, but both the Examiner and the Bank have agreed that if the Plan is confirmed there will be a hearing to determine the issue of present value of deferred payments and interest. *See, In the Matter of Fi-Hi Pizza, Inc.,* 40 B.R. 258 (Bankr.Mass.1984).

The Court finds that, because of the deferred payments by Mr. Abdalla to the Bank, and because the Bank's liens on both the personal and real property will remain in effect after the sale, the Plan is "fair and equitable" to the Bank.

■ Class Five, the unsecured creditors, are also impaired under the Plan, 11 U.S.C. § 1124, but they have voted to accept the Plan. Classes Two through Four are to be paid in full on the Effective Date of the Plan, and are not impaired. They are thus deemed to have accepted the Plan.

2. It is not clear from reading the Plan and the Disclosure Statement whether the Bank's security interest on the personal property of the Debtor would remain in effect. At the hearing on confirmation, and again in a memorandum filed on August 19, 1984, the attorney for the Examiner stated that the Bank's lien would be preserved in both the realty and personalty of the Debtor, to the extent that such lien is a valid and enforceable lien against the Debtor.

## CONCLUSION

Based on the above, and all arguments of counsel, whether specifically mentioned or not, the Court issues the following order:

The Examiner's Plan[3] is confirmed and all objections to that Plan are overruled.

The Plan and its provisions shall be binding upon the Debtor, any entity acquiring or receiving property under the Plan, any lesser or lessee of property to or from the Debtor, and any creditor or equity security holder of the Debtor, whether or not the claim or interest of such creditor or equity security holder is impaired under the Plan, and whether or not such creditor, equity security holder or entity has accepted the Plan.

The Debtor, through the Examiner, is authorized to take such corporate action as may be necessary and appropriate to implement and effectuate the consummation of the Plan, to the extent permitted by Massachusetts Corporation Law.

The Examiner may file within sixty days from the date here of any and all objections to the allowance of any claim not heretofore objected to and bring on such objections for hearing within sixty days thereafter, unless such periods of time are extended by order of the Court. In the event of the failure of the Examiner to do so, any objections to the allowance of the claims affected thereby will be deemed waived.

The Court retains jurisdiction of these proceedings pursuant to and for the purposes of § 105(a) and § 1127 of the Bankruptcy Code and for such purposes as may be necessary or useful to aid the confirmation and consummation of the Plan and implementation of the Plan and for the following purposes, *inter alia:*

(a) to determine any and all objections to the allowance of claims;

3. The Court finds that the Examiner is a "party in interest" under 11 U.S.C. § 1121 and that he was authorized to file the Plan pursuant to this Court's order appointing the Examiner, dated October 28, 1983 and 11 U.S.C. § 1106. The Court further finds that the Plan was proposed by the Examiner in good faith and not by any means forbidden by law.

(b) to determine any and all motions of professional persons for allowance of compensation for periods prior to the Confirmation Date;

(c) to determine any and all motions pending on the Confirmation Date for the rejection or assumption and/or assignment of executory contracts (including, but not limited to provisions for assumption or rejection of executory contracts or unexpired leases as provided in the Plan);

(d) to determine all controversies and disputes arising under or in connection with, the Plan (including, but not limited to, a hearing to determine the issue of the present value of deferred payments and interest to the Bank);

(e) to determine all motions, adversary proceedings or litigated or disputed matters pending on the Confirmation Date;

(f) to determine all matters for which jurisdiction is retained pursuant to the Plan; and

(g) to determine such other matters and for such other purposes as may be necessary to enforce the terms of the Plan and this order for Confirmation.